UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LITTLE MACK ENTERTAINMENT II, INC.,

               Plaintiff,                         Case No. 4:05-CV-128

v.                                       HON. JANET T. NEFF

TOWNSHIP OF MARENGO,

               Defendant.

_____/


**OPINION**

     Plaintiff Little Mack Entertainment II, Inc. ("Little Mack") operates a retail business involving sexually explicit materials, located in defendant Marengo Township ("the Township"). Little Mack filed this case in November 2005, challenging defendant's zoning of adult businesses as unconstitutional. Little Mack sought redress under 42 U.S.C. § 1983, and declaratory and injunctive relief. The Township thereafter amended its zoning ordinance and, additionally, enacted Township of Marengo Ordinance 2005-4, which established licensing requirements and regulations for sexually oriented businesses within the township.

     On February 20, 2006, Little Mack filed an amended complaint challenging the enactment of the amended zoning ordinance as invalid and further challenging the constitutionality of both the previous and the amended zoning ordinances and Ordinance 2005-4 (Dkt. 32). The Court, Quist, J., denied the Township's motions to dismiss and denied without prejudice Little Mack's motion for

a preliminary injunction (Dkt. 39).[1]  The case is now before the Court on the Township's motion for summary judgment.  Having carefully considered the parties' oral argument, and the supplemental authority decided after this case was filed, the Court concludes that summary judgment is properly granted in favor of the Township.

## I. Facts and Procedural Background

Little Mack leases and operates a business located at 18901 Partello Road in Marengo Township (Am. Compl. ¶ 11).  The business sells books, videos and novelties related to sexually explicit expression (Am. Compl. ¶ 12).  At the time this lawsuit was filed, sexually explicit materials comprised less than 35 percent of the business's stock in trade and less then 35 percent of its floor space (*id.*). Little Mack applied for a building permit for remodeling, which the Township denied, purportedly on the ground that Little Mack's business constituted an "adult business" under the zoning ordinance and, thus, required a variance.  After this lawsuit was filed, the Township issued the building permit, but also enacted an amendment to the zoning ordinance and enacted Ordinance 2005-4 specifically regulating the operation of sexually oriented businesses (Am. Compl. ¶¶ 14, 19, 22).  On January 9, 2006, the Township notified Little Mack that it would not be allowed to operate a sexually oriented business at its current location because the location was within 600 feet of a parcel that is zoned residential, in violation of § 21 of Ordinance 2005-4 (Am. Compl. ¶¶ 20-21, Ex. C).

Little Mack states that it desires to operate an adult business as defined in the various township ordinances at issue, but has not done so because of the ordinance restrictions (Am. Compl.

---

[1] This case was transferred to the undersigned on August 10, 2007 pursuant to Administrative Order No. 07-091.

¶ 15).  Little Mack challenges the former zoning ordinance, the amended zoning ordinance, and Ordinance 2005-4 on numerous grounds under the First, Fourth, Fifth, and Fourteenth Amendments and corollary provisions of the Michigan Constitution.

It is Little Mack's contention that the Township's enactment of the amended zoning ordinance violated the procedural requirements of the Michigan Township Zoning Act (MTZA), and thus, the amended zoning ordinance is void ab initio (Am. Compl. ¶ 24).  Accordingly, Little Mack advances its constitutional challenges under the pre-amendment restrictions, as well as under the amended version of the zoning ordinance.  Likewise, Little Mack contends that Ordinance 2005-4 is void ab initio because, although it is deemed a licensing restriction, it is in fact a zoning ordinance, but was not adopted in conformity with the MTZA (Am. Compl. ¶ 25).

Little Mack's complaint alleged five counts: (1) violation of 42 U.S.C. § 1983 on numerous grounds; (2) action for injunctive relief to enjoin enforcement of the ordinances at issue and compel the Township to issue permits to operate as an adult business at the current location; (3) action for declaratory relief, determining that the ordinances are unconstitutional facially or as applied; (4) state law violations under the MTZA and the Michigan Constitution; (5) action for attorney fees under 42 U.S.C. § 1988.  The Township has moved for summary judgment of all counts.

## II. Summary Judgment Standard

A motion for summary judgment is properly granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.

*Hamilton v. Starcom Mediavest Group, Inc.,* 522 F.3d 623, 627 (6th Cir. 2008); *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005).

### III. Ordinance Enactment

As a threshold matter, the Township contends that Little Mack's challenges to the enactment of Ordinance 2005-4 and the zoning ordinance amendment fail as a matter of law. The Court agrees. Plaintiff alleged in its amended complaint that both Ordinance 2005-4 and the amended zoning ordinance (AZO) were adopted in violation of the MTZA (Am. Compl. Count IV, ¶ 56). Contrary to plaintiff's assertions, the Court finds no basis for holding that the enactments are invalid.

### A. Validity of Ordinance 2005-4

With respect to Ordinance 2005-4, plaintiff's challenge is based on § 21(a), which provides:

> It shall be unlawful to establish, operate, or cause to be operated a sexually oriented business in Marengo Township, unless said sexually oriented business is at least six hundred (600) feet from any parcel that is zoned for residential purposes.

(Dkt. 32-3, Ord. 2005-4, § 21(a).) Little Mack asserts that this provision, despite it being clothed as part of a licensing ordinance, is clearly a zoning ordinance in that it regulates the use of land and buildings according to districts, areas, or locations. Accordingly, the Township was required to comply with the MTZA[2] in enacting § 21(a), including provisions for notice of adoption, public hearings, and publication. Little Mack contends that because the Township failed to comply with the MTZA in adopting § 21, it is void ab initio.

Little Mack's premise is correct. A local government may not avoid the substantive and procedural limitations of a zoning enabling act by merely claiming that a zoning ordinance is valid

---

[2] Little Mack notes that the MTZA has since been repealed and replaced with the Michigan Zoning Enabling Act, but that the MTZA applies to the enactments at issue. The Township does not dispute the applicability of the MTZA.

4

as an enactment pursuant to the general police power.  *Krajenke Buick Sales v. Hamtramck City Engineer,* 33 N.W.2d 781 (Mich. 1948).  However, the Court is not persuaded that § 21(a) is a zoning ordinance as opposed to a regulation of activity, on the basis of the general authority cited by Little Mack.

"A zoning ordinance is defined as an ordinance which regulates the use of land and buildings according to districts, areas, or locations."  *Square Lake Hills Condo. Ass'n v. Bloomfield Twp.*, 471 N.W.2d 321, 327 (Mich. 1991) (Riley, J.) (citing 8 McQuillin, Municipal Corporations, § 25.53, p. 137).  The question whether a particular ordinance is a zoning ordinance must be decided by considering the substance of its provisions and terms, and its relation to the general plan of zoning in the community.  *Square Lake,* 471 N.W.2d at 326-327.

In *Square Lake* (cited by both parties), the court considered whether an ordinance limiting riparian property owners with a minimum of 150 feet of lake frontage, to launching and docking one motor boat, was a "zoning ordinance."  The court held that the ordinance was not a zoning ordinance, noting that it did not regulate the use of land or lake frontage, but rather regulated an "activity" by limiting the number of boats that could be parked, or launched or docked in a given amount of frontage.  *Id*. at 326.

In this case, the 600-foot residential buffer is not readily classified as the regulation of activity as opposed to regulation of the use of land.  Nevertheless, § 21(a) does not regulate "the use of land and buildings *according to districts, areas, or locations*."  *Id.* at 326 (emphasis added).  The buffer in effect regulates sexually oriented business activity.  Under their police powers, townships have authority to adopt ordinances regulating local matters, including but not limited to the public health, safety, and general welfare of persons and property.  *Id.* 325.  Accordingly, the Court finds

5

no basis for concluding that the ordinance is an invalidly adopted "zoning ordinance." *See People v. Strobridge*, 339 N.W.2d 531, 534 (Mich. Ct. App. 1983) (contrasting zoning ordinances pertaining to land use which apply, by their own terms, to only specified zoning districts, with regulatory ordinances governing land use, but which are blind to zoning differences).

Even if the Court found the 600-foot buffer in § 21(a) to be an invalid zoning provision, the invalidity of § 21 would not be determinative of the issues in this case. The 600-foot buffer is also contained in the zoning ordinance amendment, which as discussed below, the Court finds was validly enacted.

### B. Validity of the Zoning Ordinance Amendment

Little Mack alleged that the Township's adoption of the zoning amendment was invalid because it did not comply with statutory requirements under the MTZA. In particular, Little Mack contends that the Township failed to submit the proposed zoning amendment to the Calhoun County Metropolitan Planning Commission (CCMPC) as required.

The Township contends that the January 31, 2006 passage of the amendment was valid despite the fact that it was not submitted to the CCMPC because there was no county zoning commission functioning in the county at the time. That is, the CCMPC had no functioning staff in December 2005 or January 2006; there was no regularly scheduled meeting for December 2005; and the January 2006 meeting of the CCMPC was cancelled. The Township contends that, moreover, any alleged deficiency concerning the CCMPC is moot because the zoning amendment was later submitted to the CCMPC and then enacted again. The Court agrees that Little Mack's procedural challenge to the zoning amendment fails.

6

The Township twice adopted the zoning amendment, first on January 31, 2006, and again on March 13, 2006.  With regard to the January 2006 adoption, the CCMPC was not functioning in December 2005 or January 2006.  That is, the CCMPC planning director position was vacant from November 30, 2005 to February 16, 2006, and no meetings were held in December 2005 or January 2006 (Def's. Ex. E, Joanna I. Johnson Aff.; Def's. Ex. H, Gregory Purcell Aff.).  As the Township points out, the Michigan Supreme Court  has held that a zoning ordinance is not invalid by reason of the failure to submit it to a nonexistent co-ordinating zoning committee.  *Ritenour v. Dearborn Twp.,* 40 N.W.2d 137, 139 (Mich. 1949).

But even if the Township failed to submit the ordinance to the CCMPC prior to the January adoption, the Township nevertheless complied with the requirement to submit the ordinance to the CCMPC before the March 13, 2006 adoption of the zoning amendment, and the CCMPC waived its right to comment on the matter.  Although Little Mack argues that the March submission cannot cure the fatal defect in procedure, pursuant to *Davis v. Imlay Twp. Bd.,* 151 N.W.2d 370 (Mich. Ct. App. 1967), Little Mack's arguments are unavailing.  Little Mack is correct that in *Davis*, the court concluded that the township could not retroactively cure the failure to submit the enacted ordinance to a coordinating zoning committee.  *Id.* at 372.  However, *Davis* did not involve the combination of a nonfunctioning committee at the time of adoption, *subsequent submission* of the amendment to the committee, waiver of comment by the committee, and *subsequent adoption* of the zoning amendment.  Unlike in *Davis*, in this case, the zoning amendment was adopted a second time after submission to the committee.  Under these circumstances, the Court finds no procedural defect in the adoption of the zoning amendment that renders the amendment void ab initio.  The Township complied with the statutory requirement for submission to county zoning commission.

7

Little Mack provides no basis for its remaining challenges to the zoning ordinance beyond merely asserting that the record contains no evidence that the Township followed the statutory requirements for notice and a public hearing.  In responding to a motion for summary judgment, the nonmoving party may not merely rely upon its allegations, but must come forward with specific facts in support of the claim.  *Ciminillo v. Streicher,* 434 F.3d 461, 464 (6th Cir. 2006); *Mulhall v. Ashcroft*, 287 F.3d 543, 550 (6th Cir. 2002).  These additional challenges fail.[3]

## IV. Constitutional Challenges

Having concluded that Little Mack's procedural challenges to the enactment of the zoning amendment and Ordinance 2005-4 fail, the Court must determine whether Little Mack's challenges to the substantive provisions of the amended zoning ordinance and Ordinance 2005-4 have merit.  Little Mack challenges the ordinances as unconstitutional under more than a dozen various doctrines.  The Township contends that these same general challenges have been advanced in numerous other cases and rejected.  The Court agrees and finds no constitutional infirmity on the grounds asserted by Little Mack.

Little Mack's amended complaint alleges that the Township's regulation of sexually oriented businesses is unconstitutional on various grounds under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and corollary provisions of the Michigan

---

[3] With regard to Little Mack's contention that the operation of its business should be permitted as a lawful and valid nonconforming land use, the Court finds no ground for sanctioning the operation of Little Mack's sexually oriented business on that basis.  As the Township notes, because Ordinance 2005-4 is a regulatory ordinance, there is no exemption for nonconforming use. *See King Enters., Inc. v. Thomas Twp.,* 215 F. Supp. 2d 891, 916 ( E.D. Mich. 2002); *Casco v. E. Brame Trucking Co., Inc.,* 191 N.W.2d 506, 508 (Mich. Ct. App. 1971).  Moreover, since Little Mack's sexually oriented business had not been operational, it is questionable whether the business would constitute a lawful nonconforming land use even under the zoning ordinance.

Constitution[4] (Am. Compl. ¶ 30).  The Township contends that the ordinances are constitutional in their entirety.

At the core of Little Mack's constitutional challenges are provisions for a 600-foot residential buffer zone, a prohibition on nudity, a six-foot rule between patrons and performers, a 24-hour no-touch rule between the same, "open-booth" requirements, and limited hours of operation for sexually oriented businesses.  As the Court noted at oral argument, a majority of Little Mack's constitutional challenges have effectively been foreclosed by case law development in the two-and-a-half years that this case has been pending. During this time, the Sixth Circuit has definitively addressed and rejected challenges to the regulation of sexually oriented businesses on the same grounds raised by Little Mack in this case.  *See Sensations, Inc. v. City of Grand Rapids (Sensations II),* 526 F.3d 291 (6th Cir. 2008);[5] *729, Inc. v. Kenton County Fiscal Court,* 515 F.3d 485 (6th Cir. 2008); *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County* (*Deja Vu of Nashville III),* 466 F.3d 391 (6th Cir. 2006)*, cert. den.*, ___ U.S. ___, 127 S. Ct. 2088 (2007);[6] *see*

---

[4] The parties do not dispute that the protections afforded by the Michigan Constitution are coextensive with, and not greater than, their federal counterparts, with respect to the claims asserted in this case.  Accordingly, independent consideration of the claims under the Michigan Constitution is unnecessary.

[5] At the time of oral argument, the Sixth Circuit had not yet decided *Sensations*, which presented constitutional challenges nearly identical to those presented in this case.  However, the well-reasoned district court decision left little doubt that those challenges would withstand subsequent appellate scrutiny. *Sensations, Inc. v. City of Grand Rapids (Sensations I),* Nos. 1:06-cv-300 & 4:06-cv-60, 2006 U.S. Dist. LEXIS 77159 (W.D. Mich. October 23, 2006) (Bell, C.J.).  The Sixth Circuit has now definitively ruled on these issues, and has affirmed the district court's rejection of the plaintiff's constitutional challenges to the ordinances regulating sexually oriented businesses. *Sensations, Inc. v. City of Grand Rapids (Sensations II),* 526 F.3d 291 (6th Cir. 2008). (The Township filed a Notice of Supplemental Authority with respect to *Sensations II*; the parties have filed no other supplemental authority in support of their arguments.)

[6] Although this decision was referenced as *Deja Vu of Nashville II* by the district court in *Sensations I*, it is herein referenced as *Deja Vu of Nashville III* in accordance with the Sixth Circuit

9

*also Sensations, Inc. v. City of Grand Rapids (Sensations I),* Nos. 1:06-cv-300 & 4:06-cv-60, 2006 U.S. Dist. LEXIS 77159 (W.D. Mich. October 23, 2006).

Defendant moved for summary judgment on all counts alleged in Little Mack's amended complaint, categorizing Little Mack's numerous miscellaneous constitutional challenges into eight primary claims.[7]  To the extent that the Sixth Circuit decisions or other authority provides controlling precedent for the disposition of the claims in this case, lengthy analysis is unnecessary. Where the legal or factual circumstances of this case differ or the issues have not been addressed, they are considered under the applicable governing doctrines (Def's. Br. 22).  Under either analysis, the Court concludes that the Township's motion for summary judgment is properly granted.

A. *Sensations and Deja Vu of Nashville III*

The claims and issues in this case closely parallel those raised in *Sensations I*,[8] based on similar, if not identical, ordinance provisions.  The *Sensations I* decision was guided by the Sixth Circuit's resolution of similar challenges in *Deja Vu of Nashville III*.  Further, *Sensations I* has now

---

opinion in *Sensations II, supra* at 297 n.4, in light of the intervening decision in *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County* (*Deja Vu of Nashville II),* 421 F.3d 417 (6th Cir. 2005), *cert. den.*, ___ U.S. ___, 126 S. Ct. 2916 (2006).

[7] As noted *supra*, Section I, Little Mack's amended complaint alleged five general counts: Violation of 42 U.S.C. § 1983 (Count 1); Action for Injunctive Relief (Count 2); Action for Declaratory Relief (Count 3); Violation of State Law (Count 4); Action for Attorney Fees under 42 U.S.C. 1988 (Count 5).  However, the amended complaint contains a miscellany of constitutional claims throughout more than eighty paragraphs and subparagraphs.  For purposes of its summary judgment motion, the Township filtered the claims for redundancy and classified them under appropriate legal doctrines.  Little Mack does not dispute the Township's statement of the claims, and thus, the Court addresses the claims as presented by the Township.

[8] *Sensations, Inc. v. City of Grand Rapids*, Nos. 1:06-cv-300 & 4:06-cv-60, 2006 U.S. Dist. LEXIS 77159 (W.D. Mich. October 23, 2006), aff'd in part & rev'd in part, *Sensations, Inc. v. City of Grand Rapids* (*Sensations II),* 526 F.3d 291 (6th Cir. 2008); *see supra* n.5.

10

received the imprimatur of the Sixth Circuit.[9]  It is thus clear that the regulation of sexually oriented businesses within the parameters examined in those cases is not subject to constitutional challenge. This Court need not explore this well-charted constitutional territory.  A brief examination of these decisions suffices to resolve Little Mack's challenges to the regulations at issue here.

In *Sensations I*, the court considered challenges to a City of Grand Rapids ordinance that contained regulations, language, and definitions similar to those at issue here: "(1) a prohibition on total nudity; (2) regulations on "semi-nudity" (defined in significant part as female performers wearing pasties and a G-string), including a six foot buffer zone between performers and patrons and a no-touch rule; (3) an open-booth rule for adult arcades; and (4) a restriction on the hours of operation between 2:00 a.m. and 7:00 a.m." *Sensations I,* 2006 U.S. Dist. Lexis 77159 at *5-6.  The Grand Rapids ordinance incorporated "a 180-day grace period for existing businesses to modify and comply, as well as a scienter requirement for any violation." *Id.* at *6.  In this case, as in *Sensations I*, the local ordinance prohibits total nudity; requires a six-foot buffer zone between performers and patrons; and includes a no-touch rule (albeit a 24-hour no-touch rule), an open-booth requirement, and an hours-of-operation provision (must be closed between the hours of 12:00 midnight and 6 a.m.).  Ord. 2005-4, §§ 13, 14, 18(a)-(c).  Additionally, the Marengo Township ordinance contains a scienter requirement, Ord. 2005-4, § 19, and provides procedural protections for businesses subject to the licensing requirements, Ord. 2005-4, §§ 5, 11.

In a thorough and well-reasoned opinion, the district court in *Sensations I* rejected claims that the City of Grand Rapids ordinance provisions failed to pass constitutional muster with regard to challenges under the First Amendment, the Fifth Amendment, and the Due Process Clause.  This

---

[9] The district court decision was reversed on the issue of attorney fees, which are not at issue here.

Court concludes likewise with respect to the challenged provisions of the Marengo Township ordinance.

### B. First Amendment Challenges

Defendant contends that the ordinances are constitutional under the First Amendment.  The Court agrees.

Applying the standards for adult entertainment regulation, the court in *Sensations I* addressed at length, under First Amendment principles, the same constitutional challenges raised in this case. That is, whether the ordinance: (1) acted as a prior restraint on constitutionally protected expression; (2) was not a content-neutral law of general applicability, but instead an impermissible content-based restriction;(3) was facially overbroad and unconstitutionally vague; (4) failed to meet the test of *City of Los Angeles v. Alameda Books,* 535 U.S. 425 (2002), and *City of Renton v. Playtime Theaters,* 475 U.S. 41 (1986), because the ordinance was not supported by reasonable evidence of adverse secondary effects and was not narrowly tailored to serve a legitimate governmental interest; and (5) violated the First Amendment to free association.  *Sensations I,* 2006 U.S. Dist. Lexis 77159 at *14-15.  The district court concluded that the City of Grand Rapids ordinance was not vulnerable to constitutional attack on any of the grounds advanced.

First, despite Little Mack's lengthy briefing, there is little basis for argument concerning the applicable standards for evaluating First Amendment challenges to the regulation of sexually oriented businesses.  Governmental regulation of adult theaters and adult entertainment is generally evaluated as "content neutral" since the regulation is aimed at the secondary effects on the surrounding community rather than at the content of the speech.  *Sensations I,* 2006 U.S. Dist. Lexis 77159 at *15.  The applicable constitutional standards have been clearly enunciated in a number of

decisions and were reaffirmed in the recent Sixth Circuit decision in *Sensations II,* 526 F.3d at 298-299:

> Nude dancing is a form of expressive conduct protected by the First Amendment. *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville (Deja Vu of Nashville I),* 274 F.3d 377, 391 (6th Cir.), cert. denied, 535 U.S. 1073, 122 S. Ct. 1952, 152 L. Ed. 2d 855 (2002). Nevertheless, in accordance with Supreme Court precedent, the Sixth Circuit treats laws such as the Ordinance, which regulate adult-entertainment businesses, as if they were content neutral. *Richland Bookmart, Inc. v. Nichols,* 137 F.3d 435, 438-39 (6th Cir. 1998). We have applied the test first set forth in *United States v. O'Brien,* 391 U.S. 367, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968), to regulations on the operation of sexually oriented businesses. See, e.g., *Deja Vu of Cincinnati, L.L.C. v. Union Twp. Bd. of Trs.,* 411 F.3d 777, 789-90 (6th Cir. 2005) (en banc) (applying the *O'Brien* test to an hours-of-operation provision); *Deja Vu of Nashville I,* 274 F.3d at 396 (applying the *O'Brien* test to a regulation requiring a specified buffer zone between the performer and audience); *DLS, Inc. v. City of Chattanooga,* 107 F.3d 403, 410 (6th Cir. 1997) (same). . . .

> The *O'Brien* test requires us to determine whether [the government] enacted the Ordinance "(1) within its constitutional power, (2) to further a substantial governmental interest that is (3) unrelated to the suppression of speech, and whether (4) the provisions pose only an 'incidental burden on First Amendment freedoms that is no greater than is essential to further the government interest.'" *Deja Vu of Nashville I,* 274 F.3d at 393.

Contrary to Little Mack's arguments, this Court need not decide whether Ordinance 2005-4 is a total ban on speech or simply a time, place or manner restriction to determine whether the restrictions on speech are judged under a content-neutral or content-based standard. A government's attempt to regulate the secondary effects of sexually oriented businesses is treated as content-neutral, since the regulation is aimed at the secondary effects on the surrounding community rather than the content of the speech. *Sensations I,* 2006 U.S. Dist. Lexis 77159 at *14 (citing *Renton,* 475 U.S. at 47). The regulations at issue here are judged as content-neutral restrictions under the *O'Brien* test based on intermediate-scrutiny. *Sensations I,* 2006 U.S. Dist. Lexis 77159 at *14-15.

13

1. Application of the *O'Brien* Test

Here, as in *Sensations I*, the government adopted a comprehensive licensing and regulatory ordinance to address the adverse secondary effects of sexually oriented businesses. The ordinance meets the four-part *O'Brien* test. First, there is no dispute that the Township has the authority to enact the ordinance.

Second, the ordinance serves a substantial government interest. The Supreme Court has recognized that local governments have an undeniable important interest in combating the secondary effects of sexually oriented businesses. *Sensations I,* 2006 U.S. Dist. Lexis 77159 at *16 (citing *City of Erie v. Pap's A.M.,* 529 U.S. 277, 296 (1977). A local government is not required to conduct its own studies of secondary effects, but instead may rely on any evidence "reasonably believed to be relevant," including previous judicial opinions, land use studies, or anecdotal reports. *Sensations I,* 2006 U.S. Dist. Lexis 77159 at *16-17. "Secondary effects can include a diverse range of problems, including negative impacts on surrounding properties, illicit sexual behavior, litter, and urban blight." *Sensations I,* 2006 U.S. Dist. Lexis 77159 at *17.

Section 1 of Ordinance 2005-4 sets forth ample findings and rationale to establish that the ordinance serves a substantial government interest. The Township asserts that in adopting the ordinance, it relied on judicial opinions, land use and crime impact reports, and anecdotal reports of illicit sexual behavior and unsanitary conditions in sexually oriented businesses (Def's. Br. 26). The Township relied on more than 30 court decisions and 20 reports addressing the adverse secondary effects of such businesses and the constitutionality of regulations relevant thereto. Ord. 2005-4, § 1(b) (citing legislative evidence). These sources are proper and adequate evidence of

14

secondary effects.  *Sensations II,* 526 F.3d 298-299; *Sensations I,* 2006 U.S. Dist. Lexis 77159 at *17-22.

Based on the legislative evidence cited, Ord. 2005-4, § 1(b), the Township found:

(1)  Sexually oriented businesses, as a category of commercial uses, are associated with a wide variety of adverse secondary effects including, but not limited to, personal and property crimes, prostitution, potential spread of disease, lewdness, public indecency, obscenity, illicit drug use and drug trafficking, negative impacts on surrounding properties, urban blight, litter, and sexual assault and exploitation.

(2) Sexually oriented businesses should be separated from sensitive land uses to minimize the impact of their secondary effects upon such uses, and should be separated from other sexually oriented businesses, to minimize the secondary effects associated with such uses and to prevent an unnecessary concentration of sexually oriented businesses in one area.

(3) Each of the foregoing negative secondary effects constitutes a harm which the Township has a substantial government interest in preventing and/or abating. This substantial government interest in preventing secondary effects, which is the Township's rationale for this ordinance, exists independent of any comparative analysis between sexually oriented and non-sexually oriented businesses. Additionally, the Township's interest in regulating sexually oriented businesses extends to preventing future secondary effects of either current or future sexually oriented businesses that may locate in the Township. The Township finds that the cases and documentation relied on in this ordinance are reasonably believed to be relevant to said secondary effects.

The evidence and rationale meets the required standards for establishing that Ordinance 2005-4 serves a substantial government interest.  In *Deja Vu of Nashville III,* 466 F.3d at 398, the Sixth Circuit observed that it had "followed the Supreme Court in deferring to local governments' conclusions regarding whether and how their ordinances address adverse secondary effects of adult-oriented establishments."  The record establishes the Township's reasonable belief that the ordinance will help ameliorate the identified secondary effects.  *See id.*  Under the principles and analysis set forth in *Sensations I,* 2006 U.S. Dist. Lexis 77159 at 16-27, there can no valid argument that the nearly identical rationale concerning secondary effects and the restrictions legislated in the

Marengo Township ordinance are constitutionally infirm.  Contrary to Little Mack's arguments, the affidavit of Daniel Linz, Ph.D., which concludes that the ordinances were based on shoddy data and flawed reasoning, does not undermine the legislative basis for adopting the ordinances (Pl's. Br. 37-38).  *See Sensations I,* 2006 U.S. Dist. Lexis 77159 at *22-27 (rejecting efforts and evidence that would effectively challenge the findings and decisions of controlling cases with regard to secondary effects evidence).

The third part of the *O'Brien* test requires a determination of whether the ordinance is unrelated to the suppression of speech.  As discussed above and in *Sensations I,* 2006 U.S. Dist. Lexis 77159 at *27-29, the regulations at issue are properly viewed as content-neutral.  The ordinance is aimed at suppressing the secondary effects of sexually oriented businesses and not the speech communicated by those businesses.  *See Sensations II,* 526 F.3d at 299.  Nothing in the Marengo Township ordinance warrants a different conclusion from that reached in *Sensations*.

Finally, with regard to the fourth part of the *O'Brien* test, the Court is persuaded that the incidental burden on First Amendment freedoms is no greater than is essential to further the government interest.  Ordinance 2005-4 contains five key prohibitions at issue (Pl's. Br. 36).  It prohibits performers from appearing totally nude; it requires "pasties and a G-string."  Ord. 2005-4 § 18(a).  It requires an employee who appears semi-nude ("performers") to remain on a stage that is at least six feet from patrons and in a room of at least 1000 square feet.  *Id.* at §18(b).  It requires performers to refrain from knowingly or intentionally touching patrons on the premises within 24 hours after appearing semi-nude.  *Id.* at §18(c).  It has an "open-booth" requirement requiring minimum interior lighting, signage and specific configuration for sexually explicit video viewing

16

rooms.  *Id.* at § 14.  And further, it prohibits business operations between the hours of 12:00 midnight and 6:00 a.m.  *Id.* at § 13.

Regulations such as those above have been upheld by the courts as narrowly tailored and constitutional.  *Sensations I,* 2006 U.S. Dist. Lexis 77159 at *30-32.  In *Sensations II,* 526 F.3d at 299, the Sixth Circuit reiterated its agreement with the district court's reasoning that such regulations meet the "narrowly tailored" requirement:

> The prohibition of full nudity has been viewed as having only a de minimis effect on the expressive character of erotic dancing.  See *City of Erie,* 529 U.S. at 301; *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 572, 111 S. Ct. 2456, 115 L. Ed. 2d 504 (1991) (plurality opinion).  A plurality of the Supreme Court in *Pap's A.M.* rejected the argument that a ban on total nudity "enacts a complete ban on expression" and instead found that the ban "ha[d] the effect of limiting one particular means of expressing the kind of erotic message being disseminated."  529 U.S. at 292-93.  In addition, the Sixth Circuit has upheld every one of the other regulatory provisions contained in the Ordinance:  the six-foot distance requirement between performer and audience members and the no-touching rule; the open-booth requirement; and the limitation on hours of operation.  See *Deja Vu of Cincinnati,* 411 F.3d at 789-91 (upholding an hours-of-operation limitation on adult businesses); *Deja Vu of Nashville I,* 274 F.3d at 396 (upholding a three-foot buffer/no-touching regulation); *Richland Bookmart,* 137 F.3d at 440-41 (upholding limitations on the hours and days that an adult-entertainment business could operate); *DLS, Inc.,* 107 F.3d at 408-13 (upholding a six-foot buffer/no-touching regulation); *Bamon Corp. v. City of Dayton,* 923 F.2d 470, 474 (6th Cir. 1991) (upholding an open-booth requirement).

In this case, as in *Sensations II,* the Court inquired of counsel for plaintiff [Little Mack], the grounds for challenge in light of the clear pronouncements in *Sensations II* (Tr. 3-5, 26).  Little Mack argued, in particular, that the Township's 24-hour no-touch rule is excessive and does not reasonably combat the secondary effects of sexually oriented businesses (Tr. 27-29).  While no case precedent appears to sanction a 24-hour no-touch rule as opposed to a no-touch rule merely during performance, the Court is not persuaded that the 24-hour period renders the regulation unconstitutional.

In *DLS,* 107 F.3d at 412, the court specifically addressed the standards for determining whether a regulation was not substantially greater than necessary to achieve the government's interest in the prevention of crime and disease, under part four of the *O'Brien* test. The regulation of speech:

> must be narrowly tailored to serve the government's legitimate, content-neutral interests but [] it need not be the least restrictive or least intrusive means of doing so. Rather, the requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation. To be sure, this standard does not mean that a time, place, or manner regulation may burden substantially more speech than is necessary to further the government's legitimate interests. Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals. So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative.

*DLS,* 107 F.3d at 412 (quoting *Ward v. Rock Against Racism,* 491 U.S. at 798-99 (1989) (internal citations and quotation omitted)).

The Township's 24-hour no-touch rule prohibits an employee who appears semi-nude in a sexually oriented business from knowingly or intentionally touching a customer or the clothing of a customer, on the premises of a sexually oriented business, within 24 hours of appearing semi-nude. Ord. 2005-4, § 18(c). As the Township points out, the regulation merely limits physical contact, not expression, and then only on the premises of the sexually oriented business. Thus, the rule leaves performers and patrons free to *communicate* with one another on the premises and free to have off-premises contact.

The courts have upheld various no-touch rules in the context of sexually oriented businesses:

> we conclude that Arlington's "no touch" provision does not burden more protected expression than is essential to further substantial governmental interests. We perceive no material difference between Arlington's "no touch" provision and

18

the "no touch" provision upheld against a similar attack in *Kev, Inc. v. Kitsap County,* 793 F.2d 1053 (9th Cir.1986). In *Kitsap County*, the Ninth Circuit upheld an ordinance that, in addition to prohibiting topless dancers and customers from fondling or caressing one another, required dancers to remain at least ten feet from the customers and prohibited patrons from tipping dancers. Referring to the "no touch" provision, the court concluded that "because of the County's legitimate and substantial interest in preventing the demonstrated likelihood of prostitution occurring in erotic dance studios, the County may prevent dancers and patrons from sexually touching each other while the dancers are acting in the scope of their employment." *Id.* at 1061 n. 11. Arlington's "no touch" provision does not criminalize more conduct than *Kitsap County's*. We are persuaded that Arlington's ordinance burdens no more protected expression than is essential to further Arlington's interest in preventing prostitution, drug dealing, and assault.

*Hang On, Inc. v. City of Arlington,* 65 F.3d 1248, 1255 (5th Cir. 1995).

The courts have held that physical contact between employees of sexually oriented businesses and patrons is not "expressive conduct" falling within the strictures of the First Amendment. *See,* e.g., *id.* at 1253 (noting that "patrons have no First Amendment right to touch a nude dancer"). But even if intentional contact was considered to be protected speech, the Court is not persuaded that the 24-hour no-touch rule fails the standards set forth in *DLS,* 107 F.3d at 412. It cannot be said that a substantial portion of the burden on speech does not serve to advance the Township's goals in the ordinance. The ordinance is intended to prevent "a wide variety of adverse secondary effects including, but not limited to, personal and property crimes, prostitution, potential spread of disease, lewdness, public indecency, obscenity, illicit drug use and drug trafficking . . . ." Ord. 2005-4, § 1(b)(1). Any burden on speech would nevertheless advance the Township's goal of preventing these adverse secondary effects.

Physical contact is the gravamen of the sexual and other illegal activity the regulations are aimed at preventing as adverse secondary effects of sexually oriented businesses. Contrary to Little Mack's arguments, the no-touch rule is precisely tailored to achieve the intended results, such as

preventing the spread of disease.  Although the no-touch rule is in effect for a longer period of time

than a personal buffer zone of several feet generally is, the no-touch rule is narrower in application.

The no-touch rule does not limit communication between performers and patrons.  Accordingly, the

Court is not persuaded that the 24-hour no-touch rule is substantially broader than necessary to

achieve the Township's interests in addressing "personal and property crimes, prostitution, potential

spread of disease, lewdness, public indecency, obscenity, illicit drug use and drug trafficking,

negative impacts on surrounding properties, urban blight, litter, and sexual assault and exploitation."

Ord. 2005-4, § 1(b)(1).

### 2. Reasonable Alternatives Avenues of Communication

Little Mack also maintains its challenge based on the number of available sites for sexually

oriented businesses.  Little Mack argues that the ordinance fails to meet the requirement for

reasonable alternative avenues of communication because the amount of land available for adult uses

is not constitutionally sufficient (Pl's. Br. 40-41).  *See Renton,* 475 U.S. at 47, 50; *Christy v. City*

*of Ann Arbor,* 824 F.2d 489, 491 (6th Cir. 1987).  Contrary to Little Mack's argument, the Court

finds no basis for upholding this challenge.

Under the amended zoning ordinance, sexually oriented businesses are permitted uses in the

HS–Highway Service Commercial District and in the LI–Light Industrial District (Am. Compl., Ex.

D).  However, under the amended zoning ordinance and § 21 of Ordinance 2005-4, a building

containing a sexually oriented business must be at least 600 hundred feet from any parcel that is

zoned residential.  The Township has presented evidence that Marengo Township contains eleven

parcels of land that conform to these requirements, which are available sites for sexually oriented

businesses (Def's. Ex C, Def's Ans. to Pl's. 2nd Interrs., Ex K, List of Legally Available Parcels).

According to the Township's evidence, the eleven available sites comprise approximately 61.35 acres or approximately 58 percent of the commercial land in Marengo Township (Def's. Reply, Ex. 5, Wicklund Aff. ¶¶ 17-19).  Further, the eleven sites constitute nearly one-half of the commercially zoned parcels in the township, since there are 24 commercial parcels in total (*id.* ¶ 19).

Little Mack disputes the figures cited by the Township on the ground that some of the acreage included in the Township's figures is not actually available.[10]  Regardless, Little Mack applies a different calculus to determine site availability.  Little Mack contends that the available acreage is only .00010329 percent of the total acreage of 22,848 acres in Marengo Township, which is far less than the five percent margin found sufficient in *Renton,* 475 U.S. at 53, or the one percent margin suggested by *Dia v. City of Toledo,* 937 F. Supp. 673, 678 (N.D. Ohio 1996) (Pl's. Br. 42-43).

Although the parties dispute certain aspects of site availability, the Court cannot conclude that these disputes create a triable issue with regard to the constitutionality of the ordinances.  The Court is persuaded that the availability of sites is constitutionally sufficient.  As the Township points out, there is no evidence that the available sites exceed the demand for operating sexually oriented businesses.  *See N. Ave. Novelties v. City of Chicago,* 88 F.3d 441, 445 (7th Cir. 1996) (considering whether an ordinance provided a "reasonable opportunity" for adult business).  Given the modest size and population of Marengo Township, the number of available site provides reasonable alternative avenues for the communication of erotic expression.  *Compare Executive Arts Studio, Inc. v. City of Grand Rapids,* 391 F.3d 783, 797 (6th Cir. 2004) (a half dozen possible sites in a city

---

[10] Little Mack also contends that it is entitled to additional discovery to determine the available acreage.  The Court finds no basis for this argument given the history and length of time these proceedings have been pending.  Little Mack has produced no evidence to persuade the Court that additional discovery would warrant a different result.

with over 2,500 parcels of commercially useable real estate is wholly inadequate to provide for reasonable alternative avenues of communication).

### C. Remaining Challenges

The Court is persuaded that any remaining bases for challenge to the Marengo Township ordinances have been sufficiently addressed and foreclosed by prior precedent.  As noted above, numerous constitutional challenges raised here were rejected in *Sensations I*.  The legal and decisional basis of the constitutional challenges in *Sensations I* apply in this case.

### 1. Freedom of Association

Little Mack has failed to allege a valid freedom of association claim.  Little Mack contends that the ordinance violates the right of expressive association between the audience and entertainers. *See Sensations I,* 2006 U.S. Dist. Lexis 77159 at *35.  Little Mack asserts that the no-touch rule unconstitutionally prohibits the right to associate based on the message that is delivered and received solely because the message is not viewed as encouraged communications.  Little Mack further asserts that the rule "prohibits verbal expression, speech and even social contact, such as shaking another's hand" (Pl's Br. 45).

This same type of argument was made and rejected in *Sensations I*, *id.* at 34-37.  Little Mack's arguments likewise fail.  The Court finds no basis for a different conclusion merely because the no-touch rule is imposed for 24 hours, rather than coupled with a buffer zone for a shorter period of time as in *Sensations I*.

### 2. Overbreadth

Likewise, Little Mack's overbreadth claim has been considered and rejected.  *Sensations I*, *id.* at 37-43.  Contrary to Little Mack's argument, the ordinance's ban of all nude expression and the

requirement to be clothed does not result in overreaching constraints on constitutionally protected speech. In *Sensations I, id.* at 41, the court found no overbreadth in the nearly identical provisions of the City of Grand Rapids ordinance, observing that the ordinance was narrowly tailored, and when read together, the provisions of the ordinance prevented any realistic chance that the prohibitions would be applied in a setting other than sexually oriented businesses or to a venue not associated with the identified secondary effects. Little Mack has failed to show any basis for a different result in this case.

3. Prior Restraint

As in *Sensations I* and *Deja Vu of Cincinnati,* 411 F.3d at 786-789, Little Mack has failed to allege an unconstitutional prior restraint. The prior restraint concept comes into play when licensing procedures exist that give unbridled discretion to authorities to grant or deny permits. *Sensations I,* 2006 U.S. Dist. Lexis 77159 at 33. Further, licensing schemes regulating sexually oriented businesses may constitute a prior restraint if they fail to incorporate procedural safeguards, including: (1) "'any restraint imposed in advance of a final judicial determination on the merits must . . . be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution,'" and (2) "'the procedure must also assure a prompt final judicial decision.'" *Deja Vu of Cincinnati,* 411 F.3d at 786 (quoting *Freedman v. Maryland,* 380 U.S. 51, 59 (1965)).

The Marengo Township ordinance engenders no notions of an unconstitutional prior restraint. The Township may deny a license only based upon objective criteria. Ord. 2005-4, § 5. The ordinance provides for prompt decisionmaking and review. The Township must issue a license or a letter of intent to deny a license within 20 days. *Id.* § 5(a). With respect to a denial, the

applicant must be provided a hearing within 20 days, and the Township must render a decision within five days thereafter. *Id.* § 11(a). Moreover, a license applicant is immediately issued a Temporary License to operate until a final administrative decision is made, *id.* § 5(a), and an aggrieved party is given a Provisional License that allows continued operation or employment pending judicial review, *id.* § 11(b). Given these procedural provisions, which maintain the status quo pending a final judicial determination, Little Mack's prior restraint claims clearly fail.[11] *Deja Vu of Cincinnati,* 411 F.3d at 788-789.

### 4. Vagueness

Little Mack's vagueness challenge also fails. Even assuming that Little Mack has standing to advance its vagueness claim, which the Township contests, the claim fails on its merits. Little Mack claims that the provision for a six-foot buffer zone and the definition of semi-nudity are vague. Similar challenges were summarily rejected in *Sensations I,* 2006 U.S. Dist. Lexis 77159 at 45-48. Little Mack's bare assertion that the language defining specified sexual activities, and thus, adult entertainment, is unconstitutionally vague, is insufficient to establish a claim, and thus does not warrant a different result.

### 5. Taking

Little Mack claims that the Township's denial of operation of a sexually oriented business at its present location is an improper taking without just compensation and due process because it temporarily denied Little Mack the lawful use of its property. In *Sensations I,* 2006 U.S. Dist. Lexis

---

[11] To the extent that Little Mack raised questions at oral argument concerning whether a proper basis exists for the license fees set under Ordinance 2005-4, pursuant to *729, Inc.,* 515 F.3d 485, these questions do not impact summary judgment (Tr. 30). Little Mack's mere belief that the fee structure is a flaw in the ordinance that must be cured is insufficient to raise an issue of triable fact. A respondent must present affirmative evidence to defeat a properly supported motion for summary judgment. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989).

77159 at 48-50, the court considered the merit of the plaintiffs' taking claims under similar circumstances. The court found such claims devoid of merit under the tests for a taking. The same analysis and result apply in this case. Little Mack's taking claim fails.

### 6. Due Process

Little Mack broadly claims that enforcement of Ordinance 2005-4 violates due process. This claim is premised on Little Mack's contention that the ordinance eradicates businesses and the industry in whole without any procedural due process. Little Mack's due process challenge is essentially a reiteration of its failed secondary effects arguments. The Court finds no merit in this claim for the same reasons that the similar due process arguments were rejected in *Sensations I,* 2006 U.S. Dist. Lexis 77159 at 50-53.

### 7. Equal Protection

Little Mack's complaint also alleged a claim under the Equal Protection Clause. This claim was not at issue in the proceedings on the motion for summary judgment. To the extent that Little Mack maintains any challenge to the ordinances on Equal Protection grounds, this claim fails. As the court stated in *DLS*, with regard to a similar challenge to the regulation of sexually oriented businesses:

> In cases such as this one, the Equal Protection Clause adds nothing to the First Amendment analysis; if a sufficient rationale exists for the ordinance under the First Amendment, then the City has demonstrated a rational basis for the alleged disparate treatment under the Equal Protection Clause. See *Renton,* 475 U.S. 41 at 55 n.4; *Young v. American Mini-Theatres,* 427 U.S. 50, 63-73, 49 L. Ed. 2d 310, 96 S. Ct. 2440 (1976) (plurality opinion).

*DLS,* 107 F.3d at 412 n.7.

V.  Conclusion

Given the facts of this case and the ample precedent addressing analogous legal claims concerning the regulation of sexually oriented businesses, the Court rejects Little Mack's challenges to the Township's zoning ordinance and Ordinance 2005-4.  Accordingly, the Court GRANTS the Township's motion for summary judgment of Little Mack's complaint.  An Order will be entered consistent with this Opinion.

DATED:  July 17, 2008                                  /s/ Janet T. Neff                              
                                                                       JANET T. NEFF
                                                                       United States District Judge